WO

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Morris, | No. CV-06-2312-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner, Social Security Administration, | |
| Defendant. | |

Plaintiff applied for Social Security disability benefits in October 2002. The Social Security Administration denied benefits initially and on reconsideration. An administrative review hearing was held on January 19, 2005. The administrative law judge ("ALJ") issued a decision on September 14, 2005, agreeing that plaintiff was not entitled to benefits. Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the ALJ's decision.

The court has before it plaintiff's motion for summary judgment (doc. 14), statement of facts (doc. 15), and memorandum (doc. 16). The court also has before it defendant's cross-motion for summary judgment (doc. 18), statement of facts (doc. 19), memorandum (doc. 20), and plaintiff's response (doc. 23). For the reasons below, plaintiff's motion is denied and defendant's cross-motion is granted.

**I.**

Plaintiff has various physical and emotional complaints, including fibromyalgia, arthritis, sleep apnea, and depression. The ALJ determined that plaintiff's current medical problems are less severe than he maintains and do not render him disabled. We must affirm the ALJ's decision so long as it is supported by substantial evidence and is based on proper legal standards. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).

The ALJ conducted the five-step sequential evaluation set out in 20 C.F.R. § 404.1520. If at any step in this evaluation the claimant is found to be disabled or not disabled, the inquiry ends. The ALJ determined at step five that plaintiff is not disabled. Plaintiff contends that the ALJ erred at steps two and five.

**II.**

At step two, the ALJ determines whether the claimant has a medical impairment that is "severe" under the Regulations. If not, the claimant is not disabled and the inquiry ends; if so, the inquiry continues. Plaintiff contends that the ALJ erred at step two by not classifying his depression as severe. However, it was not necessary to address plaintiff's mental limitations at step two, because the ALJ recognized that plaintiff had other severe impairments, including fibromyalgia. Therefore, step two was satisfied, and the ALJ proceeded with the evaluation, understanding that all of plaintiff's impairments, including his depression, were relevant to the remaining steps.

For steps four and five, the ALJ had to determine plaintiff's "residual functional capacity" ("RFC"), meaning the level of exertion of which he is capable. The ALJ found plaintiff capable of a full range of "light work." The ALJ used this RFC at step four and determined plaintiff incapable of his previous work as a mechanic, which is considered semi-skilled "medium work." Therefore, the evaluation proceeded to the final step.

At step five, a claimant will be found disabled unless the Social Security Administration shows the existence in the national economy of other jobs of which the claimant is capable. Often, this showing can be made constructively, with the use of the Medical-Vocational Guidelines ("grid"). The grid identifies whether jobs are available given

1  various combinations of RFC, age, education, and experience.  Importantly, use of the grid
2  is appropriate only where the RFC describes a claimant's limitations accurately.  Heckler v.
3  Campbell, 461 U.S. 458, 462 n.5 (1983).  RFC accounts only for exertional limitations;
4  therefore, if a claimant has significant mental limitations, the grid should not be used.  Here,
5  the ALJ used the grid, which dictated a finding of no disability, meaning that jobs do exist
6  for someone with plaintiff's profile.

7  Plaintiff contends that the ALJ erred at step five by rejecting or discounting certain
8  evidence of plaintiff's physical and mental limitations.  Essentially, plaintiff objects to the
9  ALJ's determination that plaintiff's physical limitations were accurately described by an RFC
10 for light work, and that plaintiff's mental limitations were not significant enough to preclude
11 reliance on the grid.  We address these in turn.

## III.

13 Plaintiff's RFC for light work is consistent with the conclusions of the non-examining
14 state agency physician, who concluded, for example, that plaintiff could stand for about six
15 hours in a normal workday and frequently lift ten pounds.  Tr. at 224–28.  Plaintiff challenges
16 the determination with a physical-ability assessment completed by Dr. Jason Graff, whom
17 plaintiff refers to as a "treating physician," and with the conclusion of examining physician
18 Dr. Rubin Bressler.  Plaintiff's Memorandum at 12.

19 Dr. Graff's assessment depicts plaintiff as extremely physically limited, with an ability
20 to stand less than two hours a day and sit less than one.  Tr. at 250–51.  According to the
21 assessment, plaintiff can never climb, balance, stoop, kneel, crouch, or crawl.  Tr. at 251.
22 The ALJ rejected this assessment, and we agree that it is the picture of unreliability.  First,
23 it appears from the treatment notes that Dr. Graff saw plaintiff for the first time the day he
24 completed the form.  Therefore, he is probably not a "treating physician."  Second, the
25 extreme sloppiness of the assessment suggests that it was completed from plaintiff's
26 subjective complaints at the time of the examination.  On the first question, "Does this patient
27 have any restrictions in lifting/carrying?", an answer in the box marked "no" is scribbled out
28 and replaced with a answer in the box marked "yes."  Three other similar changes appear on

1 the two-page form, and the form is filled out in at least two different handwritings.  Third,
2 evidence in the record simply does not bear out such extreme limitations.

3       The ALJ also assigned little weight to Dr. Bressler's opinion that plaintiff "probably
4 could not work."  Tr. at 363.  The determination whether a claimant is able to work is one
5 reserved for the ALJ based on all of the evidence.  20 C.F.R. § 404.1527(e)(1).  The ALJ
6 noted that the conclusion was not supported by Dr. Bressler's own examination of plaintiff,
7 which found, for example, good range of motion in plaintiff's extremities and no tenderness
8 in the spine.  Tr. At 362.  Dr. Bressler also observed plaintiff sitting without discomfort and
9 saw him step on and off the examination table, bend, and kneel.  Thus, the ALJ gave specific
10 and legitimate reasons for disagreeing with Dr. Bressler's conclusion.  See Morgan v.
11 Comm'r, 169 F.3d 595, 600 (9th Cir. 1999).

12       The ALJ also put forth reasons for discrediting plaintiff's subjective complaints of
13 pain and fatigue.  The ALJ noted that plaintiff's sleep apnea has gone untreated.  See Smolen
14 v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (unexplained failure to treat a complaint
15 undermines a claimant's credibility).  The ALJ also noted that plaintiff told treating nurse
16 practitioner Jennifer M. Linehan "that he was tired of his work and where he worked"–that
17 is, not that work was too painful for him.  Tr. at 25, 305.  It is not our role to second-guess
18 an ALJ's credibility determination supported by the record.  Fair v. Bowen, 885 F.2d 597,
19 604 (9th Cir. 1989).

20 **IV.**

21       Evaluating psychologist Dr. Armando Bencomo opined that plaintiff's depression was
22 in partial remission and that with counseling plaintiff "should be able to start another career."
23 Tr. at 221.  At the same time, Dr. Bencomo rated plaintiff's abilities as "poor," "fair to poor,"
24 or "fair" in several occupational and social categories.  Id. at 221.  At the hearing, plaintiff's
25 lawyer recited these ratings and asked the vocational expert whether in his opinion such
26 limitations would "preclude all other jobs."  Tr. at 434.  The expert responded, "I believe so."
27 Id.  Plaintiff contends that this testimony compels a finding of disability.

28

1    Even though the ALJ did not reject the underlying assessment by Dr. Bencomo, it was
2 not error for the ALJ to ignore the vocational expert's opinion about its implications. The
3 ALJ relied on the grid, not on the vocational expert's testimony, to show the existence of
4 other jobs. A vocational expert is required at step five "only when there are significant and
5 sufficiently severe non-exertional limitations not accounted for in the grid." Hoopai v.
6 Astrue, No. 05-16128, 2007 WL 241078, at *4 (9th Cir. Aug. 27, 2007). Despite
7 Dr. Bencomo's assessment, the ALJ found that plaintiff's depression was not sufficiently
8 severe. On the whole, the record supports this determination.

9    Mild or moderate depression is not sufficient to preclude reliance on the grid. Id. at
10 *5. The ALJ found that plaintiff's depression "results in only mild limitations that would not
11 preclude the performance of basic work functions." Tr. at 25. In her treatment notes
12 Plaintiff's treating nurse practitioner, Jennifer M. Linehan, rated plaintiff's Global
13 Assessment Functioning ("GAF") at 69 or 70, which indicates only mild depression. Cf.
14 Morgan, 169 F.3d at 598, 601 (GAF ratings from 49 to 61 did not establish that plaintiff was
15 disabled). In addition to Dr. Bencomo's opinion that plaintiff "should be able to start another
16 career," Tr. at 221, the ALJ relied on the opinions of non-examining state agency consultants
17 Drs. George and Enos, both of whom found that the record established only mild limitations
18 in social and occupational activities, Tr. at 140, 150, 231–33.

19    Plaintiff contends that the ALJ, in finding only mild limitations due to mental
20 problems, erred by rejecting or discounting the opinions of nurse practitioner Linehan;
21 plaintiff's therapist, Jeff Daugherty; and evaluating psychologists Daniel Bruns and John
22 Mark Disorbio. We disagree.

23    Ms. Linehan completed a medical assessment form dated January 4, 2005, on which
24 she rated plaintiff's limitations in all areas of social and occupational performance as
25 "moderately severe." Tr. 337–38. Because Ms. Linehan is a nurse practitioner, her opinion
26 is not entitled to controlling weight. Gomez v. Chater, 74 F.3d 967, 970–71 (9th Cir. 1996).
27 The ALJ properly rejected Ms. Linehan's assessment of such extreme limitations as
28 inconsistent with her treatment records that disclose only mild symptoms. See Morgan, 169

F.3d at 603 (explaining that internal inconsistencies are a legitimate basis for rejecting a treating physician's opinion).[1]

Therapist Jeff Daugherty indicated in a statement on October 27, 2003, that he believed it would be detrimental for plaintiff to return to work. The opinion of Mr. Daugherty, who is neither a medical doctor nor a psychologist, is not entitled to controlling weight. Gomez, 74 F.3d at 970–71. Moreover, the determination of whether a claimant is able to work is ultimately a question for the ALJ. 20 C.F.R. § 404.1527(e)(1).

Because no other source made a similar diagnosis, the ALJ rejected the suggestion from evaluating psychologists Drs. Bruns and Disorbio that plaintiff has somatoform disorder. The ALJ also discounted their evaluation because it used a test based on physical rehabilitation patient norms, rather than those of the public at large. These are specific and legitimate reasons sufficient to reject the opinion of an evaluating physician. See Morgan, 169 F.3d at 600.

The record as a whole supports the conclusion that, while the plaintiff suffers from depression, it is not a severe limitation on his occupational capability. Thus, it was not error for the ALJ to rely on the grid at step five to determine the existence of other appropriate jobs and to conclude that plaintiff is not disabled.

---

[1] The ALJ was not bound by the vocational expert's testimony on the implications of Ms. Linehan's medical assessment for two reasons: first, the testimony was not necessary because the ALJ relied on the grid; second, the ALJ rejected the underlying assessment, see Osenbrock v. Apfel, 240 F.3d 1157, 1164–65 (9th Cir. 2001).

## V.

For the foregoing reasons, **IT IS HEREBY ORDERED DENYING** plaintiff's motion for summary judgment (doc. 14) and **GRANTING** defendant's cross-motion for summary judgment (doc. 18).

DATED this 25th day of October, 2007.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge